## Commonwealth v. Woodward.

*Criminal law — Automobiles — "Hit and run" — Acts of June 30, 1919, May 16, 1921, and June 14, 1923.*

1. Under paragraph 4, section 239, of the Act of June 30, 1919, P. L. 678, as amended by the Acts of May 16, 1921, P. L. 582, and June 14, 1923, P. L. 718, any operator of a motor-vehicle who knows, or should know, that the vehicle driven by him has come in physical contact with any portion of the person or property of any other user of the highway must immediately stop, give all the needed aid within his power, and, if asked, without any evasion or circumlocution and truthfully and accurately, tell just who he is and where he lives.

2. If he stops, but fails to give assistance or reveal his identity, he is guilty of violating the act.

3. If he stops and gives assistance, but fails to reveal his identity, he is guilty.

4. If he stops and reveals his identity, but does not assist, he is guilty.

5. In jurisdictions where the failure to stop, render assistance and reveal identity is a felony, when the prosecution has proven the injury to the person or property of other users of the highway, and also the knowledge by the defendant, the burden rests on the offender to show that he did stop, give aid and identify himself.

6. Not decided, whether this rule applies in states in which the offence is a misdemeanor.

Motion for a new trial. Q. S. Montgomery Co., April Sess., 1925, No. 95.

*George C. Corson*, Assistant District Attorney, for Commonwealth.

*High, Dettra & Swartz*, for defendant.

WILLIAMS, J., Jan. 18, 1926.—Clarence Woodward, the defendant, living at No. 332 Walnut Street, in the Borough of Jenkintown, this county, having been convicted by a jury of a violation of the Act of Assembly of June 30, 1919, P. L. 678-701, section 23, P. L. 692, paragraph 4, as amended by the Acts of May 16, 1921, P. L. 582-613, section 10, P. L. 603-4, and June 14, 1923, P. L. 718-50, section 20, P. L. 745, through his counsel, moves for a new trial and, in support of the motion, sets forth the single reason that "the verdict of guilty of the charge of failure to render assistance was against the law and the evidence."

At the trial, William I. Bowden, the prosecutor—in appearance a high class gentleman—residing at No. 416 Olney Avenue, in the City and County of Philadelphia, this State, where he holds the responsible position of Supervising Engineer for the American Engineering Company—testified, under oath, that, on Sunday, the 15th day of March, last year, about 2.45 P. M., while out for a drive and accompanied by Mrs. Bowden, he had been operating, at a rate of speed not exceeding one mile in three minutes, his dark blue, one-seated, Model 59, Cadillac roadster westerly and as close as possible to the right-hand side of the highway along Church Road in the Township of Springfield, this county; that, as thus he was coming near to the village of Enfield, a Lincoln sedan, driven by the defendant at a rate of speed not less than one mile in one and a half minutes, had approached from the rear; that, when the Lincoln reached a point only forty feet away from the Cadillac, the defendant had turned the sedan toward the southern gutter and then, although more than half of the road was open to him, had so quickly and sharply swerved to the north that the right part of the rear fender of the Lincoln came in contact with the left portion of the front fender of the roadster, whereby the protector of the latter was broken and the Cadillac was knocked into the northern ditch; that, notwithstanding the motor-vehicle of the prosecutor was damaged by the defendant, for hundreds of yards the latter had kept on going westerly on Church Road until he reached a dirt road intersecting the road on which he was speeding from the scene of collision; that, at

Commonwealth v. Woodward.

the intersection of the highways, the defendant had forsaken Church Road and selected as the avenue of his escape the road to .his right and leading to the north; and that then he had continued several hundred yards farther along the dirt road until eventually he passed "out of sight" of the prosecutor.

Now it so happened that on this Sunday afternoon there was proceeding westerly on Church Road and about one-fourth of a mile back of Mr. and Mrs. Bowden, Leo Walsh, of No. 5214 Morris Street, Germantown, Philadelphia, who was operating his black 1925 Buick light six touring-car. With him in the Buick were two male friends, Hugh Lynch and James Reeves, and two young ladies and their chaperone, the mother of one of the girls. Lynch was seated on the front seat to the right of Walsh.

When called as a witness for the Commonwealth, young Mr. Walsh, who prior to the Sunday in question had never heard of, much less known, either the prosecutor or defendant and who was, therefore, no doubt as disinterested in reality as he appeared on the witness-stand, testified that, at a time he was traveling at the rate of thirty-six and two-thirds feet a second, the defendant had gone around him so fast that the Buick seemed to be "standing still;" that, finding the Cadillac roadster, when he came up to it, in the right ditch and the prosecutor out in the road, he had taken Mr. Bowden in the touring-car and given chase to the fleeing defendant, finally located a half-mile from Church Road; that, when Lynch handed the prosecutor a pencil for the purpose of taking the license number on the rear of the Lincoln, the defendant had demanded the instrument of writing; that there had been a strong smell on the breath of the defendant, who talked and acted as if he had been drinking and was still under the influence of liquor; that, in fact, the defendant had been "half-loaded;" that the defendant had said to Walsh that, if he should interfere in the fight already precipitated by the drunken companion of the defendant with the prosecutor, he, the defendant, would "hit" Walsh, at the same time modestly imparting the warning that he, the defendant, could "lick" Walsh, "too;" and that the defendant, apparently braver then than when haled before the bar of the court he seemed to be, boldly offered to fight not only Walsh but Lynch and Reeves as well.

Hugh Lynch swore that the defendant, going fifty miles an hour, had missed collision with the Walsh car "by an inch;" that the Lincoln sedan, without apparent diminution of speed, had then swung around the Bowden roadster "on two wheels;" and that the defendant, when found by the pursuing party, had "choked" and "dragged" his words and been "half-stewed."

Reeves testified that the defendant had talked "thick" and conducted himself in "anything but the way a sober man would act."

In the Lincoln with the defendant was a man whose condition was described by Bowden as having been "under the influence of liquor" and by Lynch as having been "stewed." When this comrade in the wild ride of the defendant took the witness-stand to help his pal, he admitted, albeit quite unwittingly of the damage he was doing to the cause of his friend, that, after the collision and before leaving Church Road, he had told the defendant of the striking by him of the roadster of Mr. Bowden.

Although the defendant testified at length and in great detail on his own behalf, he sedulously avoided a denial of the clear, positive and explicit evidence on the part of the Commonwealth that, at the hearing before William Urban, a justice of the peace of the Borough of Ambler, this county, he had stated to the justice that he, the defendant, "was in wrong by going away."

The above bare recital of a few of the facts established by the testimony taken at the trial makes it entirely clear that the second ground asserted in the one reason assigned for the granting of a new trial, namely, that the verdict was against the evidence, is wholly insufficient and inadequate to sustain the motion. Hence, there remains for consideration the sole inquiry: Was the verdict against the law?

In many Anglo-Saxon jurisdictions, there have been enacted statutes— varying in form it is true but all shaped, nevertheless, by a common purpose—requiring an automobilist, upon causing injury to the person or property of another traveler, to stop his machine and furnish his name, or other means of identification, to the traveler so injured, or to a police officer, and, if circumstances require, to give assistance to the one sustaining injury in person or property: Rex v. Hankey, 93 L. T. N. S. 107 (Eng.); State v. Verrill, 112 Atl. Repr. 673 (1921), Spear, J. (S. Jud. C. of Me.), 674; Stewart v. Com., 247 S. W. Repr. 357 (1923), Clarke, J. (C. of A. of Ky.), 358; and Bitgert v. State, 248 S. W. Repr. 1073 (1923), Lattimore, J. (C. of Crim. A. of Tex.). In fact, so serious a matter is the flight of an automobilist after causing injury to another regarded by intelligent and enlightened legislators moved solely by the aim of bettering public welfare that in some of the most progressive and forward looking American jurisdictions the offence has been made a felony: People v. Rosenheimer, 209 N. Y. 115 (1913), Cullen, Ch. J., 118; People v. Finley, 149 Pac. Repr. 779 (1915), (Dist. C. of A., 1st Dist., Cal.) 780; and People v. Fodera, 164 Pac. Repr. 22 (1917), Lennon, P. J. (Dist. C. of A., 1st Dist., Cal.), 23.

In Pennsylvania, the 4th paragraph of the 23rd section of the Act of June 30, 1919, supra, provides that any operator of a motor-vehicle who shall have injured the person or property of any other user of the highway shall stop and render such assistance as may be necessary and shall, upon request, give his name and address to the injured party, or his proper representative, and the 6th paragraph of the same section declares that any person violating any of the provisions of the section shall be deemed guilty of a misdemeanor.

As, obviously, one of the purposes of the 4th paragraph is to enable any user of the highway who, in person or property, has been injured by a motor-vehicle, if he so desires, forthwith to obtain accurate information as to the identity of the operator who has done the injury, the paragraph should be so judicially construed as to effect the legislative end in view. Manifestly, the paragraph imposes in all events two and in some cases three active and positive duties upon the injuring operator, who must, first, stop; second, render such assistance as may be necessary; and third, upon request, give his name and address to the injured party, or his proper representative. The paragraph is not satisfied by the mere stopping of the operator; or, although he may stop, by his only rendering the assistance demanded by the circumstances under which he may find person or property injured; but, even if the operator both stop and render necessary assistance, he must, also, if requested, give his name and address to the injured party, or his proper representative. In other words:

"The operator of a motor-vehicle, who knows that he has injured the person or property of another user of the highway, must perform the whole duty imposed by the statute. If he fails promptly to stop, he is guilty of an offence; if he does stop and then immediately drives on without making any attempt to render the assistance which he must have seen was necessary, he is still guilty of an offence; and if he stops and renders assistance, but

refuses, upon request, to give his name and address, this, also, constitutes an offence:" Com. v. Zeitler, 79 Pa. Superior Ct. 81 (1922), Porter, J., 83.

From the foregoing it is only too apparent, therefore, that the statutory provision does not meet with compliance if all the operator does is to bring his car to a halt at some point remote in both time and space from the happening and locality of the infliction of injury and so obscured from and inaccessible to the injured user of the highway that the injuring operator is no longer in a position to render the necessary assistance or to be requested to give his name and address; for, in unmistakable language, the act requires that the operator shall, without hesitation in either decision or action, come to a halt on the spot of the infliction of the injury, at once give every possible aid made necessary by the injury and continuously hold himself in readiness to furnish, whenever asked, that definite and explicit information as to himself which will readily identify him and make it simple and easy for him subsequently to be located and found, if necessary: Com. v. Horsfall, 213 Mass. 232 (1913), Rugg, C. J., 236.

It is true that under the language of statutes prohibiting the flight of an automobilist after an accident, apparently, the intent of the accused has been considered, sometimes, a material element of the offence charged. Thus it was held, in Com. v. Horsfall, supra, that, upon an indictment under Statute, 1909, chapter, 534, section 22, against the driver of an automobile for knowingly going away without stopping and making himself known after causing injuries to person and to property, the defendant cannot be said "knowingly" to have failed to perform the requirements of the statute if, after causing the injuries, he sent back from the place where his automobile stood disabled by the collision a messenger with instructions to tell his name and residence and supposed that the messenger had done this, although in fact he had not; and, in People v. Curtis, 217 N. Y. 304 (1916), Willard Bartlett, C. J., that it is essential to a conviction under and indictment for a violation of sub-division 3 of section 290 of the Highway Law (L. 1910, ch. 374) that the jury should be satisfied beyond a reasonable doubt not only that an injury had been caused to person or property, but that the defendant knew that such injury had been caused and, notwithstanding such knowledge, left the scene of the accident without giving his name, address or license number, and that he neglected subsequently to report the injury to the nearest police station, or judicial officer, as the law required.

In Massachusetts, however, as already seen, the offence prohibited is that of knowingly going away, without stopping and revealing identity after causing injuries to person and to property; and in New York the highway law provides that the operator must stop, give his name, etc., where he is operating a motor-vehicle "knowing that injury has been caused to a person or property, due to the culpability of the said operator:" People v. M'Laughlin, 165 N. Y. S. 545 (1917), Taylor, J. (S. C., Crim. Term) ; and People v. Rosenheimer, supra.

The word "knowingly" means "with knowledge," that is "intentionally and designedly:" First Nat. Bank v. Davis, 70 S. E. Repr. 246 (1911), Evans, P. J. (S. C. of Ga.), 249. As used in a criminal statute, the word denotes that state of mind wherein the person tried was in possession of facts making him know that lawfully he could not do the forbidden act: State v. Smith, 105 S. W. Repr. 68 (1907), Neil, J. (S. C. of Tenn.), 69. "Knowingly" is a word frequently inserted in statutes creating crimes. In such connection, it commonly imports a perception of the facts requisite to make up the crime, Com. v. Horsfall, supra; that, generally speaking, the accused person knew

what he was about and, possessing such knowledge, proceeded to commit the crime specified in the indictment: State v. Bridgewater, 85 N. E. Repr. 715 (1908), Jordan, J. (S. C. of Ind.), 718. Hence, in case a statute, in defining a public offence, makes knowledge an essential element of the crime charged, the Commonwealth, in prosecuting for a violation of the criminal law, must aver and prove such knowledge on the part of the accused person: State v. Bridgewater, supra.

In the Pennsylvania statute, however, neither the word "knowingly" or "knowing" is to be found nor, in any other manner, is the element of knowledge on the part of the motor-vehicle operator of injury to the person or property of another user of the highway made an essential ingredient of the conduct prohibited by the 23rd section, supra, which, as hitherto observed, declares that every "operator of a motor-vehicle who shall have injured the person or property of any other user of the highway" shall stop, etc. In defining the offence, the act does not employ the word "knowingly" or any equivalent term. In fact, the act, does not make scienter or knowledge of the infliction of injury by the operator a material element so as to require the Commonwealth to allege it by pleading or establish it by proof at trial. This lack of the element of knowledge in our statute is, therefore, most illuminating. By the simple expedient of extracting the word "knowing" or "knowingly" from the provisions of similar statutes of sister states, the legislature of Pennsylvania has accomplished the desired end of making the very act of going away, after injury to person or property, by the driver of an automobile without stopping of itself a crime.

But even where the social welfare statute regulatory of the use of licensed motor-vehicles upon the public highways says that "any person operating a motor-vehicle, who, knowing that injury has been caused to a person or property, due to the culpability of the said operator, or to accident, leaves the place of said injury, or accident, without stopping," etc., shall be guilty of a misdemeanor, the knowledge of injury to person or property within the meaning of the statute requiring the operator to stop does not mean an absolute, positive knowledge. To the contrary, if the circumstances be such as would ordinarily superinduce the belief in a reasonable person that injury might have befallen another traveler, it is the duty of the motor operator to stop his vehicle: Woods v. State, 73 So. Repr. 129 (1916), Evans, J. (C. of A. of Ala.), 130. Under such a statute, if the operator of a motor-vehicle merely knows that he has collided with another machine, it is his duty to stop and make a thorough personal investigation as to the possibility of injury to the person or property of another and, if he finds the existence of injury, no matter how slight, to either, then to comply with the remaining requirements of the law: People v. Curtis, supra, 523.

In the light of the authorities herein cited and the reasoning therein contained, it would seem to be a safe, sane, sound and conservative construction of the Act of June 30, 1919, P. L. 678, to hold that, in Pennsylvania, any operator of a motor-vehicle who knows, or should know, that the vehicle driven by him has come in physical contact with any portion of the person or property of any other user of the highway must immediately stop, give all the needed aid within his power and, if asked, without any evasion or circumlocution and truthfully and accurately, tell just who he is and exactly where he lives: Com. v. Ebersole, 2 D. & C. 782 (1922), Hargest, P. J. (12th Dist., Dauphin Co.). To hold otherwise would be, in reality, a confession of judicial unwillingness to help make the highways of the State fit for the use of the citizens of the Commonwealth.

· In this connection, since the question whether the burden is upon the prosecution to show that the defendant failed to stop, render assistance and upon request give his name and address does not appear as yet to have been decided in Pennsylvania, or at least not authoritatively so, it may be worth while, in passing, to record that, in a jurisdiction where the crime is a felony and the operator "knowing," etc., hits and runs, there is respectable authority for the proposition of law that, within the fair purview of the act, the Commonwealth, having once proven that the operator of a motor-vehicle injured the person or property of another user of the highway, should not be required to show that the operator did not stop, give aid or furnish information as to his identity and place of residence, because the situation is one in which there is presented a negative proposition of fact immediately within the special knowledge of the injuring operator under such surrounding circumstances as to cast upon him the burden of proving that he made full compliance with the statutory mandates: People v. M'Laughlin, supra [165 N. Y. S.], 546.

In the instant case, the sole occupant of the Lincoln other than the defendant told his operating host that the sedan had collided with the Buick just passed. Thus the defendant became aware, if he did not already know, that an accident had happened. When he turned away from Church Road towards the north, if he had looked back, he would have seen the crippled roadster in the northern ditch. In fact, if the defendant as he drove away did not observe the unfortunate plight of the prosecutor, it must have been because the former did not look. But the defendant could not evade compliance with the act by shutting his eyes and stepping on the gas. On the contrary, there was imposed upon him, the operator along a public highway of the State of a motor-vehicle he was permitted to drive only by license from the Commonwealth, the obligation of immediately ascertaining for himself whether Mr. or Mrs. Bowden had been injured in person or the property of either had been damaged. Had the defendant wished to discharge this obligation, he would have seen to it that, before he ever left the scene of the collision, he stopped and rendered assistance and, if requested, gave his name and address.

When all of the evidence is considered, it is transparent that the one thought of the defendant was to make the quickest possible escape. He knew so well the rate of speed at which he had been traveling and his criminal conduct in operating a motor-vehicle while under the influence of intoxicating liquor that like a guilty man he fled. Instead of trying to obey the statute, by flight and concealment of identity he sought to evade responsibility for the infractions of the law he had already committed, thus swelling the number of his crimes.

And now, Jan. 18, 1926, upon due and full consideration of all the testimony adduced at the trial, the entire evidence and the whole record, after listening to the oral arguments made by counsel for the Commonwealth of Pennsylvania and Clarence Woodward, the defendant—no statement of the points in controversy or brief of authorities having been submitted, as required by Rule 25, on the part of counsel for either the Commonwealth or defendant (see Hoopes Brothers and Thomas Co. v. McMenamin, 39 Montg. Co. Law Repr. 309 (1923), 310; Com. v. Symington, 41 Montg. Co. Law Repr. 33 (1925), 40; and Engard et al. v. Engard et al., 41 Montg. Co. Law Repr. 255 (1925), 258-9—and following long reflection and mature deliberation, the motion for a new trial is overruled, the sole reason in support of the said motion is dismissed and the defendant is ordered to appear for sentence, in Court Room Number One (1), at Ten o'clock in the morning (10 A. M.) of Monday, the first day of February, 1926.

From Aaron S. Swartz, Jr., Norristown, Pa.